Good morning, my name is Robert Bellis. I represent Alex Bursch. He's presently incarcerated in Seattle in a federal prison. I wanted to try and attend to two issues primarily. One, the main issue would be the probable cause issue and why the district court denied us. The district court found somehow Krupa was a controlling case in this. The evolution of the law here on these search warrants involving child pornography is troubling. The district court thought the word jailbait, just to give one example, or the abbreviation PTHC added that little extra something that would get past the batter-shell brunette statement that you've got to describe to the magistrate that I've seen something that is child pornography. Describe what it is. Basically, there's five points in the brunette decision. Just say, you know, a young person in some type of sexual activity. You've got to describe it for the magistrate. You can't just say, as in this case, Mathers says, that there was child pornography. You know, that Ishige, the original person from San Jose, indicated that he downloaded some of the material from Bursch's computer and said it was child pornography. So all you've got is that. You've got that, plus then you've got the word jailbait or the other abbreviations. If that was enough, and this is the world we're living in, then a person who, for example, had something on their computer and that said, apparently that they downloaded something that said jailbait, and it could be just an ad for something else, having nothing to do with pornography, if that was the kind of thing that would allow a magistrate to sign a warrant, there'd be no limits on this. I think the batter-shell brunette rule are logical. You must say, this is what we've seen on this man's computer. We will describe it to you. No abbreviations. No conclusionary statements. It's gone back. It's in time immemorial. It's, again, reaffirmed by the Underwood decision that I attached late that came in by Judge Pregerson talking in general about just principles. That was a drug case. It was decided in August. So, again, we started this by analyzing there's no probable cause. Then we found the other errors. Then there's that absurd situation where we got Warrant 1 that was signed by both the fines and submitted to Judge Arneson in Contra Costa County, and Warrant 2 was signed only by Shabazz, and the probable cause statement that says nothing about Shabazz being involved in it was signed by Mathers. So the judge in, and, again, that's in the record at Volume 1, Page 72, Judge Hamilton giving her decision. So, well, I find that, impliedly, the first warrant was incorporated by reference. Well, if it had been incorporated by reference, I wouldn't be standing here. It might have been an easy thing to do, but it wasn't. There was nothing attached, nothing stapled, nothing incorporated by reference. So you have to look at the second warrant. The number we've got here is Judge Laitner's warrant. It was, you know, Warrant 10-533. That warrant, you've only got one affiant signing it, and all he says is the first warrant was signed. We didn't get it served on time, but another judge signed it. Well, that came out again in August here by Judge Gregerson down in the Los Angeles case saying, you can't rubber stamp another judge's warrant. You've got to look at it again and see what's in front of you. If that was the case, oh, trust me, we had the same thing we wrote up for this judge. He signed it. It's all there. So those are the two main points. Maybe I failed to say this. I wanted to reserve three minutes on this, and I've got about six right now. So I think the Court disagreed with us on this issue concerning the, like, impliedly incorporated by reference the first warrant. I don't think that that shouldn't even be close. The second issue where the Court agreed that Bowery doesn't apply, because Bowery was like a plain view case. But it said that this Krupa case, which came down after that, sort of gave this little extra emergency effect. There's no emergency here whatsoever. There was no emergency. He was at his home, you know, and there was nothing like that. So with that, I'm going to reserve the final time if I could. Thank you. We'll hear from the government. May it please the Court. Good morning, Your Honors. Owen Mardekin for the United States. The District Court was correct in this case to defer to the magistrate's probable cause finding and to uphold the search warrant here. The totality of the circumstances raised a fair probability that child pornography would be found at this defendant's home. I'd like to deal first with the issues that the defense raises in their argument, notably the issue about the use of file names as an indicator of probable cause. I think this Court should be guided by the Bowery case. The Bowery case on this particular issue is actually legally indistinguishable from the situation that we have here. We're talking about the same kind of a file-sharing network in which people distribute and, as is described in the affidavit, trade child pornography and other kinds of files, contraband or not, online. Second of all, we're talking about explicit file names that are used so that people can search for them, so they know what they're looking for. Very specific monikers, such as preteen hardcore, ETHC, that are known, that this Court has even recognized are known to be associated with child pornography, to the extent that that's what these particular undercover law enforcement officers search for, because it's such a useful descriptor of what the file actually contains. This is not similar, as the defense suggests, to a case of a file that is sitting on someone's computer at home. Precisely because the government learned about it through the file-sharing. Yes. Right. Exactly. Because the file is being broadcast, it's being advertised. Someone may name their file at home in any manner of quirky ways that someone might think is suspicious, someone else might think is completely meaningless. So there's not so much that can be gleaned from that. But when somebody posts a file on a file-sharing service that is simply, the title is simply a list of search terms, ages, jail bait, PTHC descriptors, then it's there for a specific purpose, and that is to describe what the file contains. I have some difficulty in the district court's conclusion that one can simply bootstrap the prior search warrant into the present one. I assume you're prepared to stand on the August 30th affidavit and search warrant alone without reference to the prior one? Absolutely, Your Honor. And I don't think, well the ---- I mean, it's not incorporated by reference specifically in the document, and it's kind of a stretch to say that, you know, obviously that both documents were in front of the issuing judge on October, I'm sorry, August 30th. Well, the earlier search warrant, the one signed by a different judge, was certainly not before the Second Magistrate, nor was it incorporated, nor was it stapled or provided or ---- The difficulty I have, then, if you're looking at the August 30th, is this question of the address, which we have cases about particularity that deal with typographical errors, but this seems odd because, as I read it, the first page of the search warrant says, go to this address, and the house looks like this. But then the probable cause affidavit says, actually, this gentleman and his house at 5018 Wagon Wheel is where you're going to find all this stuff. So you have this direct collision. What is your best case to say that we can import these particularity cases into the probable cause context? Well, I think that in this case, as in similar cases, the evidence shows that it's a pure good faith error for a number of reasons. First, the record does include the actual return that came back from the Internet service provider, which is to the correct address, 5016. So when they talk about, we want to go to this ISP address, and that's where we saw his documents, that's linked up with the 5016, correct? Yes, Your Honor, the correct address. But, Counsel, that affidavit in support of probable cause, it just doesn't list the wrong address. It goes on to aver that the officer checked the DMV records, that the officer obtained records from the Antioch Police Department with regard to a traffic violation, and that the officer checked with another database, and all of those established the address. Yes, and it's so – But they don't indicate what the address was. It's a very poorly placed typographical error for that reason, Your Honor. Well, I want to ask you about a case that you didn't cite, so it's a little bit unfair, because maybe you've read it, maybe you haven't. But it's United States v. Boulder, and it was decided by the Ninth Circuit in 1977, a very similar situation where there are different addresses in the probable cause affidavit and in the search warrant. When the officer went to the scene, the officer discovered that there was a problem, that there was a discrepancy, called the magistrate judge, explained the discrepancy to the magistrate judge in some detail, and the magistrate, over the phone, orally authorized the officer to proceed with the search. And in at least my reading of the case, it seemed quite important that the mistake was caught ahead of time and approved by the magistrate judge. Well, in this case, and I'm not sure if it's a distinguishing factor from the facts in that one, the inconsistency is actually not between, just between the affidavit and the search warrant, but it's actually internal within the affidavit as well. The incorrect and the correct addresses are both in the affidavit, and the correct address is in the search warrant. Now — Well, that's not exactly right either. The incorrect address is in the probable cause statement. You agree with that? The incorrect — yes. Yeah. And in the probable cause statement, there's no mention of the correct address. So the magistrate judge could not find that there was probable cause to search 5016 because that wasn't mentioned in the probable cause. It was mentioned in the affidavit in support of the search warrant, but not the probable cause finding. It's true. So is that a difference without a distinction or not? Well, I think it's an important distinction because from looking at the affidavit, there's clearly a problem. The affidavit itself, the head face page of the affidavit has the correct address. Then the search warrant has the correct address. I can presume that the description, the detailed description of the actual residence is accurate because when the officer went out there, the correct address presumably matched up with the actual description. Yeah, but we don't know that. That's kind of a puzzle. That's another part of the record that's missing. What if they had gone to 5018 and seized a computer? Would that be good faith in your view? And it was a — And there was child pornography on it. Yeah. I think it would be a problem because this is a different subscriber. I mean, it would be a complete coincidence. The person sharing the files would not be the person who was living at 5018 and who has that Internet account. Here, the person who lives at 5016, this defendant, is the actual person who's the subscriber to the Internet account, who is using the IP address, who is sharing the images, the videos rather, that provided the probable cause in the first place. So the search warrant, besides putting the type of graphical error aside, all the links are there in the probable cause chain. If a police officer went to 5018, and presumably that address exists, and for other reasons they made the complete mistake, and there was some other person with child pornography there, there wouldn't be any probable cause. The link would have been broken. That wouldn't have been the person who was sharing the file that originally began the probable cause chain. Well, while we're on the probable cause, do you have the second page of the probable cause affidavit in front of you? I do, Your Honor. Okay. And I'm looking at the second line, second full sentence. SBC must also accurately send Internet traffic to the IP address. Otherwise, Birch's Internet service would not have worked properly. Why isn't that just a conclusory allegation? Where's the factual basis for that, and how would we know that the affiant would know that? I mean, I don't know that that's true. Well, the affiant does describe that he, as well as the previous detective, have over 100 hours of training in online file sharing and in use of this kind of network, and that is. . . Yeah, but that's got nothing to do with how SBC works. Well. . . SBC is the Internet service provider. It does in the sense that the Internet is the mode for distribution of these files. So, in order to understand how this file sharing service works, that's the spine of this whole network. So, they would have to understand how that worked in order to understand how the file sharing service works. But, okay, let's assume you're right, and that statement's correct that it went to the right IP address. How do you know that his home was the IP address? Because that's the address that comes back from SBC. From SBC. Yes. And clearly, Your Honor, it's the one that's miscopied. So, that's the unfortunate typographical error. But the search warrant and description of the house were correct, which I think restored the chain of probable cause. It doesn't do anything then when you get in there and you get his computer that is his IP address on that computer? Yes, because that's the computer that is using that Internet connection. That IP address. But that's after the fact. The magistrate judge didn't know that. I'm talking about good faith here, Your Honor. Oh, I'm sorry. I'm sorry. But, yes, that is. It is after the fact. So, I think, seeing that my time is run, unless Your Honors have other questions on the other issues, I believe the sentencing issue was abandoned, and so I'll ask the Court to affirm. Well, can I ask you this? Yes. Because I've been struggling with this case. And so, is one way to look at it, there was probable cause to search Birch's residence. The probable cause affidavit has the wrong address, but the warrant itself describes the house with particularity and has the right address, so that, at least with regard to particularity, there's not much risk that they would have searched the wrong home. That's correct. Okay. But how was there probable cause to search that home? Well, I think that in order to find there was not probable cause, this Court would have to say that typographical error voids the whole, breaks the chain, voids the whole chain of probable cause, which I think the Court shouldn't do, given that the affidavit, not that page of the probable cause statement, but the actual affidavit does also include the correct address. So, it would be clear to any reader that there's a problem, that it's not as if there's probable cause for one thing and then a search for something else. Well, it wasn't clear to the judge who signed it, and apparently it wasn't clear to the officers because nobody caught the mistake. I think that's true. So, what exactly was clear? That one of those two numbers had to be wrong within the same document. But how did the magistrate judge know which one was wrong? Well, I think the magistrate judge, just from those two numbers, wouldn't know which one was wrong, but would know that there was a typographical error, not that there is an intentional plan to search another address. So, thank you, Your Honor. Thank you. Rebuttal? I have to thank the visiting judge from Iowa for that case and that research that neither one of us apparently caught, the Bowler case. The comment by the court down below was that this was sloppy work, this was shabby work. I wouldn't have approved it maybe if it had come before me, but it kind of barely makes it even though it's a close case. Well, to us, it seems to be more than that. It does seem that one of the keys is the rubber stamping, so to speak, of the warrant that was earlier signed. I mean, the judge thinking, well, this was already before another judge, so I'm not going to look very closely at this. And the shabaz preparing that, putting all those mistakes in there. So, you really have a situation where it's more than just sloppiness. It's the kind of thing that just doesn't come past the constitutional muster. And we've briefed it well except for this well-pointed out problem with the address where what if you go to the other address and you see something? Would the government be giving it all back? Probably not. They'd probably be arguing the other way. Well, the question in my mind really is one of good faith, and we all look at documents day in and day out, and we draft opinions, and a week later we see that we have miscited a case by number or something else. So it happens all the time where you just can't see things. Why is it entirely unreasonable in the good faith context to say that this was, in fact, in good faith, whether you call it sloppy or whatever? It's partly accumulation of the errors, partly accumulation of all the things that should have been spotted. Just one is the fact that it's not signed by an affiant, that it's the person who is the only person that describes the probable cause. Mathers is the person who did all of the probable cause. There's nothing in there that indicates Shabaz was in any way involved in that or had any knowledge of that. That's why we did an alternative Franks motion saying, well, if he really said that he knew everything about what Mathers had done and he really was part and parcel of it, then he'd be lying. But really, we don't have to get to that because he really didn't. Shabaz didn't. All he knew was a prior warrant had been signed and that it was late and they were going to reissue it. So I guess that's more than sloppy. There's nothing there before the court that is signed by the affiant, by the person who did the probable cause investigation. It's just not there. I think Judge Thomas pointed out that you can't imply that the first warrant was probably before the judge. If it had been before the judge, fine, but it wasn't. And you can't imply it. That's actually the verbiage of the district court, of course. So that alone. Well, why isn't there a colorable? I mean, if you take just the four corners of what was presented to the magistrate on August 30th, you've got an inconsistent address, but it seems to match up with the IP address that's attached. Why wouldn't good faith apply there? Just to that error. On the address issue? Yes. Well, the problem is, again, all the probable cause is for a different address. So just on the four corners of it, we all know that one of those two addresses is a mistake. Well, you can't tell which one. The judge should see that, well, maybe the probable cause was for the actual address, or maybe it was the other way around. The warrant was meant to be written for this, the 18, the 5018. So you can't tell that. I mean, at that point, you just can't discern that. I just think it's giving – when you go to stretch it to allow the judge to sign off on a warrant like this with none of the description that you really need, as we've said, with the wrong address, with the affiant that it's sworn to all these things earlier, not the blank signature lying right there in front of you, and it's not sworn to by the fellow that is in front of you, Detective Shabazz. I mean, to me, the totality of it, the four corners of it, and the cumulativeness of it, it's a bad warrant. It should have never been signed. It shouldn't have been a search. It should be suppressed. Thank you. Thank you for your argument. The case, Mr. Earle, will be submitted for decision.
judges: Bennett, Thomas, McKeown